UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO MORRISSETTE,

                    Petitioner,                Case Number: 04-CV-72372

v.                                        HONORABLE ARTHUR J. TARNOW

JEFFERY WOODS,

                    Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

      Petitioner Antonio Morrissette has filed a *pro se* petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254.  Petitioner, who is currently incarcerated at the Newberry

Correctional Facility in Newberry, Michigan challenges his conviction for first-degree

premeditated murder.

### I.  Facts

      Petitioner's conviction arises out of the strangling death of Pam Hyzer on September 4,

2000, in Saginaw, Michigan.

      Jimmy Duane Ragland testified that, in September 2000, he lived in an apartment with

Petitioner and Holly Morris.  On the morning of September 4, 2000, Mr. Ragland, who was

sleeping on a couch in the living room, was awakened when Petitioner entered the apartment.

Petitioner went into the bedroom he shared with Ms. Morris.  After approximately ten or fifteen

minutes, Petitioner left the apartment.  Mr. Ragland testified that, the following day, Petitioner

told Mr. Ragland that he had seen Pam Hyzer pointing him out to the police and telling them that

he sold drugs.  Petitioner stated that he had gone to Ms. Hyzer's apartment and choked her with a

Morrissette v. Woods, No. 04-CV-72372

belt.  After she fell to the ground, Petitioner dragged her across the floor to ensure that she was dead.  He also admitted to kicking her in the head.  Petitioner stated that the shoes he was wearing when he killed Ms. Hyzer were covered with blood, which Ms. Morris cleaned off for him using bleach.

Devario Stephens testified that Ms. Hyzer was a crack addict who purchased crack cocaine from Petitioner.  Ms. Hyzer would stop by Petitioner's house once or twice a day to purchase drugs.  Shortly after September 4, 2000, Mr. Stephens heard Petitioner brag about having killed Ms. Hyzer.

Holly Morris testified that she was Petitioner's girlfriend.  She testified that, on either September 4 or 5, 2000, Petitioner asked her to clean his tennis shoes.  She cleaned them using a toothbrush and bleach.

Willie Derek Mims testified that, in September 2000, he was employed as a counselor at Wolverine Human Services.  He testified that he spoke to Petitioner by phone shortly after Petitioner was arrested in connection with Ms. Hyzer's death.  Petitioner told Mr. Mims that he did not do anything, all he did was choke Ms. Hyzer, who was still alive when he left.

Dr. Kanu Virani testified that he conducted an autopsy on Pam Hyzer.  Dr. Virani concluded that Ms. Hyzer died as a result of strangulation.  The injuries on her neck led him to conclude that a hard, linear object, such as a belt, had been pressed against her neck.

Saginaw police detective Andrew Carlson testified that he investigated the murder of Ms. Hyzer.  On September 15, 2000, Petitioner gave a statement to Detective Carlson in which he admitted to strangling Ms. Hyzer.

2

Morrissette v. Woods, No. 04-CV-72372

Petitioner did not testify in his own defense.

## II.  Procedural History

Following a jury trial in Saginaw County Circuit Court, Petitioner was convicted of first-degree premeditated murder and felony murder.  On March 25, 2002, he was sentenced to life imprisonment without possibility of parole for the first-degree premeditated murder conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.      Defendant-appellant's statement to the police was involuntary and should have been suppressed.

II.     It was ineffective assistance of counsel not to object to evidence of an alleged prior rape and sodomy of the victim by defendant-appellant.

The Michigan Court of Appeals affirmed Petitioner's conviction.  People v. Morrissette, No. 240729 (Mich. Ct. App. Sept. 16, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims presented to the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal because the court was "not persuaded that the questions presented should be reviewed."  People v. Morrissette, 469 Mich. 1016 (Mich. 2004).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the same claims presented in state court.

## III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

3

Morrissette v. Woods, No. 04-CV-72372

claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
        determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
        State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

        A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  Id. at 410-11.

## IV.  Analysis

### A.  Admissibility of Petitioner's Statement to Police

        Petitioner argues that he is entitled to habeas corpus relief because the trial court erred in

admitting into evidence Petitioner's statement to police.  Petitioner claims that the statement was

involuntary because police failed to advise him of his rights under Miranda v. Arizona, 384 U.S.

4

Morrissette v. Woods, No. 04-CV-72372

436 (1966), prior to questioning him.  Petitioner further claims that his confession was coerced because the police told him a fictional story about a police officer who killed someone but was not charged with a crime because he acted in self defense.

The trial court conducted an evidentiary hearing pursuant to <u>People v. Walker</u>, 374 Mich. 331 (1965),[1] to determine the voluntariness of Petitioner's statement to police.  Following the hearing, the trial court determined that the confession was admissible because Petitioner was not in custody at the time the statement was taken.  The trial court further concluded that, although Petitioner was not in custody at the time his statement was taken, he had been advised of his <u>Miranda</u> rights, and understood them.

During the <u>Walker</u> hearing, Saginaw City Police Detective Andrew Carlson testified that he spoke to Petitioner on September 13 and 15, 2000, regarding the murder of Pam Hyzer. Petitioner made no admissions during the September 13, 2000, interview, but Detective Carlson discussed the potential for a polygraph examination with Petitioner.  A polygraph examination was scheduled for September 15, 2000.  Detectives Carlson and Paetz drove to Petitioner's home on that date to transport him to the State Police Crime Lab in Bridgeport, Michigan.  Detective Carlson testified that Petitioner was transported in an unmarked vehicle and was not handcuffed. When they arrived at the Crime Lab, Sergeant Brian Cole, the polygraph operator, conducted Petitioner's pre-test interview, which Detective Carlson observed on a closed circuit television. Although Petitioner had not been placed under arrest, Detective Cole advised Petitioner of his

---

[1] <u>People v. Walker</u>, 374 Mich. 331 (1965) requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

5

Morrissette v. Woods, No. 04-CV-72372

Miranda rights, and Petitioner signed a waiver of rights form.  Sergeant Cole advised Petitioner

that if he was lying to the detectives, he would probably fail the test.  Petitioner asked to speak

with Detective Carlson again.

Detective Carlson testified that he then entered the interview room with his partner,

Detective Paetz.  Petitioner told Detective Carlson that he had not been truthful in the earlier

interview with police.  Petitioner then admitted to choking Ms. Hyzer.  Detective Carlson

testified that he did not advise Petitioner of his Miranda rights prior to taking this statement

because Petitioner was not in custody and Petitioner had initiated the contact with Detective

Carlson.  After Petitioner gave his incriminating statement to the detectives, Detective Carlson

asked him if he had been advised his rights by Sergeant Cole.  Petitioner stated that he had.

Detective Carlson also asked whether Petitioner understood what Sergeant Cole had told him;

Petitioner indicated that he had.

At the Walker hearing, Petitioner testified that Detective Cole advised him of his rights

during the pre-polygraph interview.  Petitioner acknowledged that prior to commencement of the

polygraph examination, he asked to speak to Detectives Carlson and Paetz.  He testified,

however, that he did not understand that the rights previously read to him applied to his

conversation with Detectives Carlson and Paetz and did not understand that what he told the

detectives could and would be used against him in a court of law.

The trial court held that Petitioner's statement was voluntarily made because Petitioner

was not in police custody and there was no police misconduct which overcame his will and

influenced him to confess.  The trial court also found that Petitioner was advised of his Miranda

Morrissette v. Woods, No. 04-CV-72372

rights prior to giving his statement and that he voluntarily waived those rights.  People v.

Morrissette, No. 00-019263-FC-3, Opinion and Order Denying Defendant's Motion in Limine,

Motion to Quash, and Motion to Allow Expert Medical Testimony, June 20, 2001.

The last state court to issue a reasoned opinion regarding Petitioner's claim, the Michigan

Court of Appeals, held that the trial court did not err in admitting this statement.  The Michigan

Court of Appeals stated, in pertinent part:

> Defendant first argues that his statement to police was not voluntary because the
> police mislead [sic] defendant to believe that he could "walk away from the
> situation he was in" as long as he "told the police what they wanted to hear."  He
> contends that the officers told him a false story about a "police officer who was
> not charged because he was attacked," thus inducing defendant to confess.[]
> Implicit in this argument is that defendant argues his constitutional right to
> protection against self-incrimination is implicated because he was in custody and
> subjected to interrogation.  We disagree that defendant's Miranda[] rights were
> even implicated because no evidence existed that the police either attempted to
> interrogate him or employed a practice that they knew or believed would invoke
> an incriminating response.

> Defendant is correct that statements of an accused made during custodial
> interrogation are inadmissible unless the accused voluntarily, knowingly, and
> intelligently waived his Fifth Amendment rights.  Miranda, supra, . . . However,
> Miranda warnings are not required unless the accused is subject to a custodial
> interrogation. . . . A custodial interrogation is a questioning initiated by law
> enforcement officers after the accused has been taken into custody or otherwise
> deprived of his freedom of action in any significant way.  Miranda, supra, . . .
> Whether an accused was in custody depends on the totality of the circumstances.
> The key question is whether the accused could reasonably believe he is not free to
> leave. . . .

> Here, evidence produced at the Walker hearing revealed that Defendant agreed to
> take a polygraph examination and was picked up at his residence by plain-clothes
> detectives in an unmarked car.  Defendant rode unrestrained to the Michigan State
> Police Crime Lab.  After waiting briefly in the lobby, defendant met alone in the
> interview room with the polygraph examiner.  Defendant was not restrained and
> was not told that he could not leave.  Under the totality of the circumstances,
> defendant could not have  reasonably believed that he was not free to leave.[3]

7

Morrissette v. Woods, No. 04-CV-72372

Further, defendant fails to demonstrate that he was ever subject to police interrogation.  Police conduct constitutes an interrogation triggering <u>Miranda</u> when the conduct constituted express questioning or a practice that the police knew or reasonably should have known was likely to invoke an incriminating response.  <u>People v. Anderson</u>, 209 Mich. App. 527, 532-533; 531 N.W.2d 780 (1995).  Here, the detectives waited in the lobby when defendant entered the polygraph examination room.  It was defendant who requested to speak to the detectives shortly after entering the room.  The detectives, who had interviewed defendant two days earlier, did not initiate the questioning and allowed defendant to make a narrative statement.  Because defendant fails to show any interrogation by the police, he fails to show how his <u>Miranda</u> rights, or rights against self-incrimination, were ever implicated.  Therefore, defendant's argument that his waiver of those rights was not voluntary is irrelevant.  Accordingly, defendant fails to show how the trial court's denial of his motion to suppress those statements amounts to clear error.

_____
[3]Nonetheless, the record is clear that <u>Miranda</u> warnings were read to defendant by Sgt. Cole and that defendant acknowledged them in writing before making a statement to the detectives less than ten minutes later.  Defendant acknowledges in his brief on appeal that "it is not per se necessary to re-warn a defendant of <u>Miranda</u> rights prior to a post-polygraph interrogation.  Whether the pre-polygraph warnings will extend to cover the post-examination statements must be viewed in the totality of the circumstances, including consideration of any intervening circumstances."  Here, defendant requested to talk to detectives and made a statement less than ten minutes after being advised of his <u>Miranda</u> rights.  There were no intervening circumstances to consider, and the detectives were not required to again warn defendant of his <u>Miranda</u> rights.

<u>Morrissette</u>, slip op. at 1-3.

The procedural safeguards imposed by <u>Miranda</u> are designed "to safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination . . . while in police custody."  <u>Thompson v. Keohane</u>, 516 U.S. 99, 107 (1995).  Custody is determined by examining whether a reasonable person in the suspect's position would believe that he or she was free to leave.  <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984).  *See also* <u>Standbury v. California</u>, 511 U.S. 318, 323 (1994) ("[T]he initial determination of custody depends on the

Morrissette v. Woods, No. 04-CV-72372

objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). "Courts must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" Yarborough v. Alvarado, 124 S. Ct. 2140, 2149 (2004), *quoting* Stansbury v. California, 511 U.S. 318, 322 (1994) (*per curiam*).

The Supreme Court has characterized this standard for determining whether a person is in custody as a "general" rule. Id. at 2150. When determining whether a state-court adjudication of a claim involved an unreasonable application of clearly established law, more latitude is afforded the state courts in applying a "general" rule:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

Id. at 2149.

In this case, "fair-minded jurists could disagree" over whether Petitioner was in custody. Id. Certain facts weigh against finding that Petitioner was in custody. Petitioner was not advised that he was required to come to the police station for a polygraph. Police and Petitioner reached an agreement as to when the polygraph would occur. Petitioner was transported, unrestrained in an unmarked police car. He had been interviewed by police two days previous and been permitted to leave. Petitioner was not told that he could not leave the state police post. He

9

Morrissette v. Woods, No. 04-CV-72372

requested to speak with the detectives.  At the same time, certain facts support a finding that

Petitioner was in custody.  He was transported by police detectives to the state police post,

approximately six miles from his home.  Therefore, if he wanted to leave he was dependent upon

the detectives to transport him.  Detectives did not expressly advise Petitioner that he was free to

leave.

The Supreme Court has held that, where, as here, certain facts surrounding an

interrogation support a finding that a defendant was in custody and certain other facts support a

contrary finding, a state court's holding that a defendant was not in custody is not contrary to

clearly established law because "fair-minded jurists could disagree" over the custody

determination.  Id.  While this Court may have reached a contrary conclusion on the custody

issue than that reached by the Michigan Court of Appeals, such is not the standard governing this

Court's review.  The Court cannot say that the Michigan Court of Appeals' decision falls outside

the matrix of the Supreme Court's decisions governing the custody issue.  Therefore, the state

court's conclusion that Petitioner was not in custody was not contrary to or an unreasonable

application of Supreme Court precedent.

Moreover, even if Petitioner were in custody at the time he gave his statement to police,

he has not shown that he is entitled to habeas corpus relief.  Petitioner concedes that he was

advised of his Miranda rights during the pre-polygraph interview.  He maintains, however, that

he did not understand that these rights were applicable to his conversation with Detectives

Carlson and Paetz.  The state court concluded that because Petitioner gave a statement

approximately ten minutes after being advised of his Miranda rights, and because no intervening

10

Morrissette v. Woods, No. 04-CV-72372

change in circumstances occurred requiring a reiteration of the <u>Miranda</u> rights, the detectives did

not violate Petitioner's rights under the Fifth Amendment by not advising him of his rights a

second time.  <u>Morrissette</u>, slip op. at 2, n.3.

A defendant who was advised of his <u>Miranda</u> rights prior to submitting to a polygraph

examination need not be re-advised of his rights prior to post-examination questioning by the

police.  <u>Wyrick v. Fields</u>, 459 U.S. 42, 47 (1982).  Petitioner was advised of his rights during the

pre-polygraph interview.  He then, on his own initiative, requested to speak with the detectives.

While it may have been prudent for the detectives to re-advise Petitioner of his rights, no

Supreme Court precedent required them to do so.  Therefore, the state court's conclusion was not

contrary to or an unreasonable application of Supreme Court precedent.

Finally, Petitioner claims that his statement was involuntary because it was induced by

Detective Carlson's false story about a police officer who was not charged with murder because

he acted in response to an attack.  A confession is considered involuntary if: (1) the police

extorted the confession by means of coercive activity; (2) the coercion in question was sufficient

to overbear the will of the accused; and (3) the will of the accused was in fact overborne

"because of the coercive police activity in question."  <u>McCall v. Dutton</u>, 863 F.2d 454, 459 (6th

Cir. 1988), <i>cert. denied</i>, 490 U.S. 1020 (1989).  When determining whether a confession is

voluntary, the ultimate question is "whether, under the totality of the circumstances, the

challenged confession was obtained in a manner compatible with the requirements of the

Constitution."  <u>Miller</u>, 474 U.S. at 112.  All of the factors surrounding the confession should be

scrutinized closely.  <u>Culombe v. Connecticut</u>, 367 U.S. 568 (1981).  However, without coercive

11

Morrissette v. Woods, No. 04-CV-72372

police activity, a confession should not be found to be involuntary.  Colorado v. Connelly, 479

U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the

finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").  A

police officer's use of a trick, by itself, is insufficient to render a confession involutnary.  Frazier

v. Cupp, 394 U.S. 731, 739 (1969).

Petitioner has failed to show that Detective Carlson's fabricated story regarding the

police officer who was not prosecuted because he acted in self-defense was sufficient to overbear

his will.  Thus the Court denies habeas relief on this claim.

### B.  Alleged Ineffective Assistance of Counsel

In his second claim for habeas corpus relief, Petitioner alleges that his trial attorney was

ineffective in failing to object to testimony that Petitioner had sodomized the victim one month

prior to the murder.

To establish that he received ineffective assistance of counsel, a petitioner must show,

first, that counsel's performance was deficient and, second, that counsel's deficient performance

prejudiced the petitioner.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  A petitioner may

show that counsel's performance was deficient by establishing that counsel's performance was

"outside the wide range of professionally competent assistance."  Id. at 689.  This "requires a

showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  Id. at 687.  To satisfy the prejudice prong, a petitioner

must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable probability is a probability

12

Morrissette v. Woods, No. 04-CV-72372

sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on

whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399

F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court

of Appeals, stated, in relevant part:

> Defendant also argues that his trial counsel was ineffective by failing to object
> when prosecution witness James Griffin testified that defendant sodomized the
> victim the month before the murder. Effective assistance of counsel is presumed
> and defendant bears a heavy burden to prove otherwise. People v. Rockey, 237
> Mich. App. 74, 76; 601 N.W.2d 887 (1999). To establish ineffective assistance of
> counsel, a defendant must show that (1) counsel's performance was below an
> objective standard of reasonableness and (2) that this deficient performance
> prejudiced [him] to the extent there is a reasonable probability that but for
> counsel's error, the result of the proceeding would have been different. People v.
> Carbin, 463 Mich. 590, 599-600; 623 N.W.2d 884 (2001). Because defendant did
> not make a testimonial record in the trial court in connection with a motion for a
> new trial or an evidentiary hearing, this Court's review is limited to the facts
> contained on the record. . . .
>
> Assuming that counsel's failure to object to Griffin's testimony constitutes
> ineffective assistance of counsel, there is not a reasonable probability that the
> outcome of the proceeding would have been different but for trial counsel's error.
> The evidence against defendant including his admissions to several people that he
> killed the victim, as well as his statement to police, was overwhelming and there
> is not a reasonable probability that the outcome of the proceeding would have
> been different absent Griffin's testimony.

Morrissette, slip op. at 3.

Although the Michigan Court of Appeals did not cite Strickland, it cited case law which

plainly incorporated that standard. This Court, therefore, must determine whether the state

court's application of Strickland was reasonable. Petitioner's trial attorney objected when the

prosecutor began questioning James Griffin about an occasion when he witnessed Petitioner

13

Morrissette v. Woods, No. 04-CV-72372

hitting another woman, not the victim in this case.  The trial court judge excused the jury, and, following argument by both sides, held that the testimony was inadmissible and gave a curative instruction to the jury upon its return.  The prosecutor then questioned Mr. Griffin about an incident when, after Petitioner and another man took the victim and her friend to their upstairs apartment, Mr. Griffin heard some hollering and screaming.  Mr. Griffin asked an unidentified person what was happening.  Mr. Griffin testified that he was informed that "they" were sodomizing the two women.  Trial counsel failed to object to this testimony.

Petitioner's attorney should have objected to this testimony on the ground that it was hearsay and that its probative value was substantially outweighed by the danger of unfair prejudice.  However, Petitioner has not shown a reasonable probability that, had his attorney objected and the evidence been excluded, the result of the proceeding would have been different. As the Michigan Court of Appeals noted, the evidence against Petitioner was overwhelming. Numerous witnesses testified that Petitioner confessed to the murder, he gave an incriminating statement to police, and requested that his girlfriend clean his sneakers with bleach shortly after the murder.  Further, the medical examiner's testimony was consistent with the details provided in Petitioner's confession.  The Court, therefore, concludes that the state court's finding that Petitioner failed to satisfy the Strickland prejudice prong was not an unreasonable application of that standard.

14

Morrissette v. Woods, No. 04-CV-72372

### V.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the application for a writ of habeas

corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


s/Arthur J. Tarnow                  
Arthur J. Tarnow
United States District Judge

Dated:  January 5, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on
January 5, 2006, by electronic and/or ordinary mail.

s/Catherine A. Pickles               
Judicial Secretary

15